IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARK E DICKASON,                              No    C-05-3234 VRW

      Plaintiff,                           ORDER

      v

JOHN E POTTER, Postmaster
General

      Defendant.
_____/

      Plaintiff filed suit against defendant on August 9, 2005, alleging disability discrimination in violation of the Rehabilitation Act (RA), 29 USC § 701 et seq, and age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 USC § 621 et seq.  Doc #1 (Compl).  Defendant has moved for summary judgment on both of plaintiff's claims.  Doc #55. Plaintiff has moved for sanctions pursuant to FRCP 37(b)(2).  Doc #38.  For reasons discussed below, defendant's motion for summary judgment is GRANTED and plaintiff's motion for sanctions is DENIED.
//

I

Plaintiff was employed by the United States Postal Service (USPS) in various positions from August 30, 1969, until December 13, 2000, which was the effective date of plaintiff's resignation.  Doc #70 (Dickason decl), ¶ 1.  At the time of his resignation, plaintiff was 50 years old and worked at USPS's San Francisco processing and distribution center (PD&C) as a motor vehicle operator, a position plaintiff had held since November 18, 2000.  Id.

The events leading up to plaintiff's resignation began in the early morning of December 13, 2000, when plaintiff was instructed by his supervisor to make additional stops at post offices in Burlingame and Brisbane, California.  Doc #59, Ex 1 (Dickason depo) at 93:10-94:15.  Plaintiff informed his supervisor that he believed the assignment to be a safety hazard, as plaintiff had been driving his vehicle for more than ten hours during his twelve-hour shift.  Id.  Plaintiff asserts that his supervisor ordered him to "[d]o it anyway."  Doc #70, ¶ 4.

After plaintiff arrived home from his shift in the morning of December 13, 2000, he decided to resign from USPS.  Doc #59, Ex 1 at 94:17-21.  That evening, plaintiff reported to work and notified Erasmo "Mito" Marquez, the supervisor on duty at the motor vehicle operator department, that he intended to resign from USPS due to unsafe working conditions.  Id at 94:21-25.  Plaintiff filled out a resignation form, a safety complaint and an exit interview form.  Doc #70, ¶ 6.

//
//

2

The following day, after talking to Gessner Syas, the American Postal Worker Union's craft president for the motor vehicle operator department, plaintiff decided to rescind his resignation so that he could pursue a union grievance against USPS. See Doc #70, ¶¶ 7-8. Syas instructed plaintiff to report back to work later that night for plaintiff's scheduled shift. Id at ¶ 8. Later that afternoon and before reporting back to USPS as Syas suggested, plaintiff suffered an injury to his eye at his "second job." Doc #1, ¶ 12. As plaintiff's counsel informed the court at argument, this second job entailed serving as a transit operator for the San Francisco municipal railway. As a result, plaintiff reported to work at USPS that night, but promptly requested sick leave due to his injury. Doc #70, ¶ 9. Apparently, plaintiff never rescinded his resignation. A few weeks later, plaintiff returned to USPS to pick up his paycheck and discovered that USPS had processed his resignation. Doc #70, ¶ 11, Ex F.

Fifteen months later, plaintiff applied for reinstatement to USPS's San Francisco district, requesting reinstatement in any position he had held (except carrier craft), as well as any position for which he would have qualified after taking an examination. Doc #57, Ex 3. Plaintiff was notified on August 2, 2002, that his name had been reached for reinstatement for the motor vehicle operator and maintenance mechanic crafts. See Doc #70, ¶ 15. When plaintiff arrived at USPS on September 9, 2002, to fill out an employment application, Carol Smith-Parker, a human resources clerk at USPS, informed plaintiff that she would not send him for a physical examination, which led plaintiff to believe his application "was not being processed properly." Doc #70, ¶ 16.

3

In October 2002, plaintiff returned to USPS to submit paperwork concerning the motor vehicle operator position. Doc #70, ¶ 17. During this time, Smith-Parker allegedly told plaintiff that it was "general knowledge that [plaintiff] was seeking reinstatement in order to recover all of the sick leave that [plaintiff] had accumulated," which totaled 1331.51 hours. Id. Plaintiff interpreted this statement to mean "that the Postal Service knew that [he] would be seeking retirement soon." Id.

In early March 2003, plaintiff received a letter from USPS's human resources department, stating that plaintiff's reinstatement application had been denied because plaintiff was not the "best qualified" candidate. See Doc #70, ¶ 19; Doc #57, Ex 5. A document dated March 4, 2003, from human resources manager Donald Barrett stated that plaintiff's reinstatement application was denied because "[plaintiff's] sudden resignation demonstrated complete disregard for [his] employer." Doc #57, Ex 4. Barrett continues to deny plaintiff's allegations of discrimination, asserting that he did not consider plaintiff's age when making the decision whether to reinstate him. Doc #56, ¶ 4.

II

Plaintiff initiated the present action on August 9, 2005, alleging discrimination on the basis of plaintiff's age and disability. Doc #1. Plaintiff challenges both the decision to process his resignation and the decision to reject his reinstatement. Id at ¶ 16. On November 2, 2006, defendant moved for summary judgment on plaintiff's claims. Doc #55.

//

4

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v Liberty Lobby</u>, 477 US 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. And the burden of establishing the absence of a genuine issue of material fact lies with the moving party. <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986). When the moving party has the burden of proof on an issue, the party's showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. <u>Calderone v United States</u>, 799 F2d 254, 258-59 (6th Cir 1986). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law.

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence supporting its claim that a genuine issue of material fact exists. <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 US at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id at 249.

//

5

### III

#### A

The court first considers defendant's argument that the court lacks subject matter jurisdiction over plaintiff's rehabilitation claim because plaintiff has failed to exhaust his administrative remedies. Doc #55 at 10. At argument, plaintiff conceded that the court lacks subject matter jurisdiction over plaintiff's disability claim.

"Without jurisdiction the court cannot proceed at all in any cause." Steel Co v Citizens for a Better Environment, 523 US 83, 94 (1998) (quoting Ex Parte McCardle, 74 US 506, 507 (1868)). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States and is 'inflexible and without exception.'" 523 US at 94-95 (quoting Mansfield, C & L Co v Swan, 111 US 379, 382 (1884)).

A federal employee's right to file an action based on discrimination in federal court is dependent on the employee's exhaustion of administrative remedies and adherence to strict deadlines. See Brown v General Services Administration, 425 US 820, 829-35 (1976). Although failure to file an Equal Employment Opportunity (EEO) complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional prerequisite. Sommatino v United States, 255 F3d 704, 708 (9th Cir 2001). See also Vinieratos v United States, 939 F2d 762 (9th Cir 1991) (extending the exhaustion requirement to claims under the Rehabilitation Act).

//

The jurisdictional scope of a plaintiff's court action depends on the scope of the EEO charge and investigation. <u>EEOC v Farmer Bros Co</u>, 31 F3d 891, 899 (9th Cir 1994); <u>Sosa v Hiraoka</u>, 920 F2d 1451, 1456 (9th Cir 1990). This court has jurisdiction over any charges of jurisdiction that are "like or reasonably related to" the allegations made within an EEO charge, as well as charges that fall within the scope of the investigation that reasonably could be expected to grow out of the allegations. <u>Sosa</u>, 920 F2d at 1456.

In the present action, plaintiff did not bring an administrative complaint on the grounds of disability discrimination regarding USPS's decision to reject his reinstatement application. Doc #71, Ex A (EEO investigation report). Moreover, plaintiff never attempted to amend his EEO charge to reflect his Rehabilitation Act claim. Instead, plaintiff pursued his claim of age discrimination with respect to USPS's failure to reinstate him. See id. Plaintiff's disability claim relies on a different theory and a different statute from his age discrimination claim. Disability discrimination was not investigated pursuant to the EEO report, and such an investigation could not have been reasonably expected to grow out of plaintiff's charges. Nothing in plaintiff's affidavit would have led the investigators to suspect that he was disabled or had been subjected to disability discrimination. Finally, plaintiff's charges do not provide USPS with adequate notice of his disability discrimination claim. Compare <u>Farmer Bros</u>, 31 F3d at 899 (holding that the plaintiff's sex discrimination claim gave the employer adequate notice of a related sex discrimination claim added during

litigation).

A decision that an EEO complaint with no mention whatsoever of disability is "like or reasonably related to" plaintiff's age discrimination claim would reduce the exhaustion requirement to a formality. Although "the EEOC charge does not demand procedural exactness," Sosa, 920 F2d at 1458, it requires more than plaintiff provided. This court does not have subject matter jurisdiction over a complaint alleging new theories of discrimination. Shah v Mt Zion Hospital and Medical Center, 642 F2d 268, 271 (9th Cir 1981). Accordingly, the court grants summary judgment on plaintiff's Rehabilitation Act claim.

B

Next, the court addresses plaintiff's claim for age discrimination in violation of the ADEA. Section 623(a)(1) of the ADEA makes it "unlawful for an employer * * * to discharge any individual * * * because of such individual's age * * *." Because plaintiff's age discrimination claim is based on circumstantial evidence of discrimination, the court applies the burden-shifting analysis announced by the Supreme Court in McDonnell Douglas Corp v Green, 411 US 792 (1973). See Enlow v Salem-Keizer Yellow Cab Co, Inc, 389 F3d 802, 812 (9th Cir 2004). The Ninth Circuit has summarized the standard for evaluating motions for summary judgment in employment discrimination cases as follows:

//
//
//
//

> A plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

Wallis v J R Simplot Co, 26 F3d 885, 889 (9th Cir 1994) (citations and internal quotations omitted). See also Palmer v United States, 794 F2d 534, 536 (9th Cir 1986); Ritter v Hughes Aircraft Co, 58 F3d 454, 456 (9th Cir 1995). It should also be noted that "when evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie case * * *." Wallis, 26 F3d at 889.

### 1

To establish a prima facie case of age discrimination under a McDonnell Douglas-type presumption, plaintiff must demonstrate that he was (1) a member of the protected class (at least age 40); (2) performing his job satisfactorily; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications. Coleman v Quaker Oats Co, 232 F3d 1271, 1281 (9th Cir 2000).

Plaintiff fails to meet his burden under the fourth prong of the McDonnell Douglas presumption, as plaintiff presents no evidence that individuals outside of plaintiff's protected class were treated more favorably. Indeed, the evidence before the court is to the contrary.

//

Most damaging to plaintiff's case is a list of individuals reinstated in postal centers in the San Francisco Bay area between 2001 and 2003, which defendant produced pursuant to an order by Magistrate Judge James. See Doc #71, ¶ 20, Ex S; see also Doc #34 (discovery order). According to this list, one employee was reinstated as a motor vehicle operator during the relevant time period, and that person was seven years *older* than plaintiff. See Doc #71, Ex S (employee designated with D/A code 435); see also Doc #71, Ex W (Marquez depo) at 53:10-13 (identifying codes for motor vehicle operator).

In response to this recent evidence, plaintiff downplays the significance of the reinstatement list, focusing instead on defendant's delay in producing the list. Doc #72 at 9-11. Plaintiff argues that because defendant failed to disclose this information in a timely manner, the court should prevent defendant from claiming that plaintiff cannot establish a prima facie case of discrimination. Doc #72 at 8-10.

The court disagrees. Defendant's alleged delay in presenting evidence does not absolve plaintiff of his obligation to present a prima facie case of discrimination. Even if defendant was precluded from presenting evidence on this issue pursuant to FRCP 37(b)(2), see *infra* section IV, plaintiff's burden remains.

To be sure, that a member of a protected class was hired or promoted in place of an ADEA plaintiff is insufficient to insulate an employer from liability. See Greene v Safeway Stores, Inc, 98 F3d 554, 561 (10th Cir 1996). While showing replacement by a substantially younger person is probative, it does not follow that such a showing is required. See, e g, Kralman v Illinois

10

Dep't of Veterans' Affairs, 23 F3d 150 (7th Cir 1994); Terry v Ashcroft, 336 F3d 128 (2d Cir 2003) (concluding that even though one of the replacements was older, the plaintiff was able to establish a prima face case of age discrimination because there was evidence in the record that age factored into the decision not to promote him.).

Nevertheless, absent evidence that plaintiff was replaced by an older person in order to ward off a lawsuit, this evidence weighs against plaintiff's claim. Compare O'Connor v Consolidated Coin Caterers Corp, 517 US 308, 313 (1996) (concluding that "the fact that a replacement is substantially younger is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). At minimum, this fact compels plaintiff to set forth other evidence in support of his prima facie case.

Because plaintiff's motions and declarations focus exclusively on defendant's delay, they fall short of establishing an inference of discrimination. Accordingly, the court finds that plaintiff fails to establish a prima facie case of age discrimination under the ADEA.

2

Even if plaintiff had proffered evidence establishing a minimal prima facie case based on a McDonnell Douglas presumption, plaintiff's discrimination claim would still merit summary judgment. Establishing a prima facie case shifts "the burden of production, but not persuasion, * * * to the employer to articulate some legitimate, nondiscriminatory reason for the challenged

action." Chuang, 225 F3d at 1123.  Once the defendant has tendered a legitimate, nondiscriminatory basis for his hiring decision, "the presumption of discrimination drops away," and the burden of production shifts back to the plaintiff.  Nidds v Schindler Elevator Corp, 103 F3d 854, 858 (9th Cir 1996).  To meet this burden, the plaintiff must introduce evidence demonstrating that the defendant's proffered reason for the employment decision was pretextual and the plaintiff's age was the actual reason.  See Wallis, 23 F3d at 892.  Hence, the plaintiff must support his allegation of discrimination with some sort of factual evidence.

Plaintiff at argument conceded that defendant advances a legitimate, nondiscriminatory reason for declining to reinstate plaintiff:  namely, plaintiff's sudden resignation suggested that plaintiff was not a dependable employee.  In particular, plaintiff's official personnel file, reinstatement file and attendance reports were forwarded to the USPS manager of human resources for the San Francisco district, Donald Barrett, on February 25, 2003.  See Doc #57, Ex 4.  Barrett reviewed the documents on March 4, 2003, and noted that "[e]mployee's sudden resignation demonstrates complete disregard for [his] employer." Id.  Barrett thus disapproved the application because plaintiff's file demonstrated that plaintiff "did not deserve to return to the Unites States Postal service as an employee."  Doc #56, ¶ 4.

Plaintiff fails to raise a genuine issue of material fact concerning whether defendant's proffered justification is merely a pretext for discrimination.  Plaintiff first attacks Barrett's decision by arguing that plaintiff's sudden resignation was essential to preserve public safety.  A closer look at the

**12**

evidence, however, suggests otherwise.  In his resignation form, plaintiff states that his supervisor's instruction to make additional stops "jeopardiz[ed] public safety" because plaintiff had not slept "for [the] previous 24 hours."  Doc #71, Ex A (PS041).  But plaintiff's 12-hour shift at USPS did not require that plaintiff be awake for 24 hours.  Instead, the likely culprit for plaintiff's sleepless stretch (and the real threat to public safety) was plaintiff's second job with the San Francisco municipal railway, as a transit operator no less.  The court thus rejects plaintiff's efforts to wrap himself in the mantle of public safety and declines to second guess Barrett's professional judgment.

Next, plaintiff points to a remark made by a personnel clerk at USPS that it was "general knowledge that [plaintiff] was seeking reinstatement in order to recover all of the sick leave that [plaintiff] had accumulated," which totaled 1331.51 hours.  Doc #72 at 13 (citing Doc #70, ¶ 14).  Even if the court accepts plaintiff's peculiar interpretation of this statement ("that the Postal Service knew that [he] would be seeking retirement soon"), this remark is insufficient to establish a causal relationship between discriminatory intent and the adverse employment action because it was made by an assistant who was not involved in the reinstatement decision.  See Doc #56, ¶¶ 2-4.

Finally, plaintiff contends that Barrett's decision was tainted by his conversation with Rudy Daniel, a USPS employee who has been the target of discrimination allegations on five occasions over the course of his career.  See Doc #71, Ex X (Barrett depo) at 55:19-58:4.  But this theory obscures two analytical gaps.  First, these unproven allegations against Daniel do not ipso facto

13

establish that Daniel pursued a discriminatory agenda in the present case. Second, no evidence suggests that Barrett succumbed to Daniel's judgment. To the contrary, Barrett asserts that he spoke with Daniel to confirm the facts underlying plaintiff's resignation; he did not adopt Daniel's judgment or decision. Id at 55:19-56:4. In sum, even if plaintiff presented evidence that Daniel intended to discriminate against plaintiff (which is lacking), there is no evidence that such an intent manifested itself in Barrett's decision.

In opposing a motion for summary judgment, a plaintiff must specify and cite to the evidence supporting his argument, rather than hope that the court, reviewing a voluminous record, somehow manages to find it. See, e g, Carmen v San Francisco Unif Sch Dist, 237 F3d 1026, 1030 (9th Cir 2001). The evidence proffered by plaintiff is far too thin a reed to support such an attenuated theory of discrimination. Accordingly, the court grants summary judgment on plaintiff's claim for age discrimination.

IV

Finally, the court turns to plaintiff's motion for issue sanctions and attorney fees on the ground that defendant has failed to produce "information and documents on similarly situated employees who were granted reinstatement." Doc #38 at 2. As defendant notes, the posture of this case has changed significantly since October 5, 2006, the date plaintiff filed his motion for sanctions. Most significantly, the information that is the subject of plaintiff's motion (the reinstatement list) has been reconstructed and disclosed to plaintiff. See Doc #71, ¶ 20, Ex S.

14

Federal Rule of Civil Procedure 37(b) authorizes a court to sanction a party "if [that] party * * * fails to obey an order to provide or permit discovery * * *." In such a case, the court may, inter alia, (1) order that the matters contained in unproduced discovery be deemed admitted, (2) refuse to permit the disobedient party to support or oppose any claims or defenses addressed by the unproduced discovery, (3) strike out all or part of the pleadings relevant to the unproduced discovery, (4) dismiss all or part of the action, (5) treat the failure to produce as contempt of court or (6) "make such orders in regard to the failure as are just." FRCP 37(b)(2).

"Sanction orders taking the plaintiff's allegations as established and awarding judgment on that basis are 'the most severe penalty,' and are authorized only in 'extreme circumstances.'" Commodity Futures Trading Comm'n v Noble Metals Int'l, Inc, 67 F3d 766, 770-71 (9th Cir 1995) (quoting United States ex rel Wiltec Guam, Inc v Kahaluu Contr Co, 857 F2d 600, 603, 603 n 5 (9th Cir 1988); further internal citation omitted). To justify their imposition, the district court must find that the failures were "due to willfulness, bad faith, or fault of the party." Id at 771 (quoting Wyle v RJ Reynolds Indus, Inc, 709 F2d 585, 589 (9th Cir 1983)). Before ordering such a sanction, a district court must weigh a set of five factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions.

Thompson v Housing Authority of City of Los Angeles, 782 F2d 829,

831 (9th Cir 1986). In addressing the availability of lesser sanctions, the court must consider whether the court has already warned the disobedient party that a terminating sanction may be forthcoming. See Malone v United States Postal Service, 833 F2d 128, 132 (9th Cir 1987). An express warning is generally required, except in cases involving "egregious circumstances." Id; see Kahaluu, 857 F2d 600 at 604. In the end, termination is proper "where at least four factors support dismissal, * * * or where at least three factors 'strongly' support dismissal." Yourish v Calif Amplif, 191 F3d 983, 990 (9th Cir 1999) (quoting Ferdik v Bonzelet, 963 F2d 1258, 1263 (9th Cir 1992)).

Here, plaintiff's motion for sanctions concerns a request plaintiff made on February 9, 2005, for documents relating to the reinstatement applications of employees to the motor vehicle operator, maintenance craft and any other positions at the San Francisco postal center from 2000 to the present. See Doc #71, Ex I at 6-7. In response to this request, defendant took the position that only the names of other rejected applicants from 2001 to 2003 were relevant and that it would be too burdensome to produce additional records. See Doc #32 at 4-5.

The court referred this discovery dispute to Magistrate Judge James on April 28, 2006. Doc #23. Defendant argued that plaintiff was not entitled to the reinstatement files because plaintiff had made no allegation that his failure to be reinstated was the result of a pattern or practice of discrimination. Doc #27 at 4; see also Obrey v Johnson, 400 F3d 691, 694 (9th Cir 2005) (statistical evidence may be relevant to allegations regarding a pattern or practice of discrimination). Defendant also contended

16

1  that because Barrett left USPS in September 2003, any documents
2  after that time period were not relevant.  Doc #27.  Magistrate
3  Judge James agreed with plaintiff's request but narrowed its scope,
4  ordering production of documents and information regarding
5  reinstatement from January 1, 2000, through September 2003.  Doc
6  #28.

7  Following the issuance of the order, defendant asserts it
8  devoted several hours of time in attempting to comply with the
9  court's order.  Doc #75 (Supp Simmons decl), ¶ 3; Ex 2 (summary of
10  time).  After defendant informed plaintiff that some documents had
11  been destroyed in connection with USPS's document retention policy,
12  plaintiff filed the pending motion for sanctions.  See Doc #38.
13  Despite the destruction of some paper records, defendant
14  substantially complied with the court's order by compiling computer
15  records to construct a chart listing persons reinstated during the
16  relevant time period along with the birth dates of such persons.
17  Doc #75, ¶ 5.

18  In view of defendant's compliance with the discovery
19  order, FRCP 37(b) no longer governs, as it authorizes a court to
20  sanction a party "if [that] party * * * fails to obey an order to
21  provide or permit discovery * * *."  In any event, to the extent
22  defendant disobeyed the court's order, this conduct does not amount
23  to the kind of "extreme circumstance[]" that warrants taking the
24  plaintiff's allegations as established.  See Commodity Futures
25  Trading Comm'n, 67 F3d at 770-71.

26  To deal with a wider range of discovery abuses than those
27  covered by FRCP 37, a district court must turn to its inherent
28  sanctioning authority "to impose sanctions for discovery abuses

17

that may not be a technical violation of the discovery rules." Roadway Express, Inc v Piper, 447 US 752, 764-67 (1980). A court's inherent power authorizes it to impose a similarly wide range of sanctions, including dismissal. Such action by the court may be justified to "protect[] the due and orderly administration of justice" and "maintain[] the authority and dignity of the court." Primus Automotive Financial Servs, Inc v Batarse, 115 F3d 644, 648 (9th Cir 1997) (citing United States v Hudson, 7 Cranch 32, 34 (1812)).

The Ninth Circuit described the finding a district court must make before it can exercise its inherent sanctioning power in Fink v Gomez, 239 F3d 989 (9th Cir 2001). In Fink, the appellate panel held that "mere recklessness, without more, does not justify sanctions under a court's inherent power." Id at 993-94. The "more" required is a finding by the district court of "bad faith or conduct tantamount to bad faith." Id at 994. More specifically, the court of appeals held "that an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain a tactical advantage in another case, are sanctionable under the court's inherent power." Fink, 239 F3d at 994.

The court's inherent power to sanction is thus "both broader and narrower than other means of imposing sanctions." Chambers v NASCO, Inc, 501 US 32, 46 (1991). It is broader in that it "extends to a full range of litigation abuses," unlike, e g, FRCP 37. Id at 46-47. It is narrower in that a finding of "bad faith or willful disobedience of a court's order" is a prerequisite

18

to its utilization. Id.  To invoke the court's inherent authority, the court must accordingly find "willful disobedience of a court order * * * or [a party acting] in bad faith, vexatiously, wantonly, or for oppressive reasons * * *."  <u>Roadway Express, Inc v Piper</u>, 447 US 752, 766 (1980).

Although defendant's course of conduct has been less than exemplary, it does not constitute "bad faith or willful disobedience of a court's order."  <u>Chambers</u>, 501 US at 46. Defendant was reluctant to produce the reinstatement list because defendant believed it to be irrelevant, as plaintiff did not advance a disparate impact theory in his complaint.  Doc #27 at 4. Once Magistrate Judge James rejected this argument and ordered production of the reinstatement file, defendant substantially complied, albeit two months later.  Doc #75, ¶ 5; Doc #71, Ex S.

Plaintiff fails to demonstrate that defendant's delay constitutes "willful disobedience of a court order."  <u>Piper</u>, 447 US at 766.  Nor does plaintiff's evidence support a finding that defendant acted "in bad faith, vexatiously, wantonly, or for oppressive reasons * * *."  Id.  Accordingly, plaintiff's motion for sanctions is DENIED.

//
//
//
//
//
//
//
//

V

In sum, the court lacks jurisdiction over plaintiff's disability claim because plaintiff has not exhausted this remedy. Plaintiff's age discrimination claim also fails because plaintiff neither establishes a prima facie case nor rebuts defendant's legitimate, nondiscriminatory justification for the adverse employment action.  Accordingly, defendant's motion for summary judgment is GRANTED and plaintiff's motion for sanctions is DENIED. The clerk is DIRECTED to close the file and TERMINATE all motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge